IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE GALAVIZ,

      Plaintiff,

v.                          No. CIV 00-0775 BB/LCS

WILLIAM A. HALTER,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11), filed January 11, 2001. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, memoranda, administrative record, and applicable law, finds that the motion is well-taken and recommends that it be **GRANTED**.

### PROPOSED FINDINGS

1.      Plaintiff, now fifty-one years old, filed his application for supplemental security income on October 18, 1996, alleging disability commencing November 13, 1991, due to an on-the-job back injury. (R. at 72-74; 113.) At the time he filed for benefits, Plaintiff was forty-six years old. (R. at 72-74.) He has a second grade education from Mexico and past relevant work was as a construction

---

[1] Effective January 20, 2001, William A. Halter was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. PRO. 25 (d), William A. Halter, Acting Commissioner of Social Security, is substituted for Kenneth S. Apfel, Commissioner of Social Security, as the defendant in this action.

worker. (R. at 38; 98.)

  2. Plaintiff's application was denied at the initial level on March 17, 1997 (R. at 55-56), and at the reconsideration level on June 3, 1997. (R. at 57-58.) Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on June 11, 1997. (R. at 68.) The ALJ held a hearing on October 30, 1997, at which Plaintiff appeared and was represented by counsel. (R. at 30.) At the hearing, Plaintiff testified through a Spanish interpreter. (*Id.*)

  3. The ALJ issued his decision on May 14, 1998, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). (R. at 22-26.) At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (*Id.*) At the second step, the ALJ determined that Plaintiff had severe impairments consisting of low back chronic pain with herniated disc at L3-4, multi-level lumbar disc degeneration, and pain in both legs. (*Id.*) At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (R. at 24.) The ALJ then found that Plaintiff had the residual functional capacity for at least unskilled, light work. (R. at 25.) At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a construction worker. (*Id.*) At step five, relying on the Medical-Vocational Guidelines (Grids), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

  4. On June 29, 1998, Plaintiff filed a request for review of the ALJ's decision. (R. at 16-18.) On December 20, 1999, the Appeals Council extended time to submit additional evidence relevant to the issues considered in the hearing decision of May 14, 1998. (R. at 12) On March 4,

1999, the Appeals Council again extended time to submit additional evidence relevant to the issues considered in the hearing decision of May 14, 1998. (R. at 10) On May 2, 2000, the Appeals Council ordered that additional evidence that had been submitted be made part of the record. (R. at 7.) On May 2, 2000, the Appeals Council denied the request for review. (R. at 4-6.) Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff filed this action on May 26, 2000, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.  In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential

evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F.2d at 1487.

7.	At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

8.	In January 1991, Plaintiff underwent an appendectomy. (R. at 117-20.) He tolerated the procedure well and was discharged to his home. (R. at 118.) The record contains no indication of any complications from this procedure.

9.	On October 27, 1995, Dr. Harry C. Zaegler, M.D. examined Plaintiff. (R. at 137.) Dr. Zaegler noted that Plaintiff had been under the care of Dr. Barry Diskant, M.D. for some time due to a herniated disc at L3/4, multiple level lumbar disc degeneration, chronic pain, and right lower extremity pain with no evidence of definite radiculopathy. (*Id.*) Dr. Diskant had prescribed Skelaxin and Salsalate, but Plaintiff reported that the medication was not very helpful. (*Id.*) Dr. Zaenger diagnosed lumbar disc disease, herniated L3/4 with some thecal sac indentation, multi level lumbar disc degeneration, chronic pain syndrome and right leg pain symptoms without definite neurological support. (*Id.*) A November 1991 CT scan revealed a left-sided protrusion at L4/5 and a centrally

located protrusion at L3/4. (*Id.*) Dr. Zaenger felt that Plaintiff had "certain definite somatization responses." (*Id.*) Dr. Zaenger continued Plaintiff's medications and asked Plaintiff to return in one month. (*Id.*)

10.     When Dr. Zaenger saw Plaintiff on November 27, 1995, Plaintiff reported that his back was in constant pain. (R. at 135.) Examination revealed Plaintiff had very little flexion, extension, or bending ability. (*Id.*) Plaintiff moved very slowly. (*Id.*) Dr. Zaenger noted some somatization responses, felt that Plaintiff was significantly deconditioned and recommended that he start a walking program. (*Id.*) Dr. Zaenger continued Plaintiff's medications and added Amitriptyline. (R. at 136.)

11.     Dr. Zaenger continued to see Plaintiff every few months at least through November 1997. (R. at 127-134.) On November 18, 1997, Dr. Zaenger completed a form entitled "Medical Assessment of Ability to do Work-Related Activities (Physical)." (R. at 162-65.) Dr. Zaenger opined that Plaintiff was able to lift up to twenty to twenty-five pounds occasionally and ten to fifteen pounds frequently, sit for two to three hours out of an eight-hour workday, and stand or walk for three to four hours out of an eight-hour workday, (R. at 163-64), could rarely stoop, and could never climb, balance, kneel, crouch and crawl. (R. at 164.) Dr. Zaenger also found that Plaintiff abilities to reach, push and pull were affected by his condition and that he was precluded from working around heights, machinery, temperature extremes, chemicals, noise, dust, vibrations, fumes, and humidity due to his back impairment. (R. at 165.) On April 14, 1997, February 17, 1998, and May 18, 1998, Dr. Zaenger filled out return to work authorizations, but did not state that Plaintiff was able to work. (R. at 166-68.)

12.     On March 13, 1997, Dr. Aida Recalde, M.D., an agency physician, reviewed Plaintiff's

records and completed a physical residual functional capacity assessment form. (R. at 139-46.)  Dr. Recalde opined that Plaintiff was able to lift up to fifty pounds occasionally and twenty-five pounds frequently, sit for six hours out of an eight-hour workday, and stand or walk for six hours out of an eight-hour workday, (R. at 140), could occasionally kneel, but was not otherwise limited. (R. at 141.)

13. On June 3, 1997, Dr. Nancy Nickerson, M.D., another agency physician, reviewed Plaintiff's records and completed a physical residual functional capacity assessment form. (R. at 147-54.)  Dr. Nickerson opined that Plaintiff was able to lift up to twenty pounds occasionally and ten pounds frequently, sit for six hours out of an eight-hour workday, and stand or walk for six hours out of an eight-hour workday, (R. at 148), could occasionally stoop, climb, balance, kneel, crouch and crawl. (R. at 149.)

**Discussion**

14. In support of his Motion to Reverse or Remand the Administrative Agency Decision, Plaintiff argues that the ALJ erred in disregarding the opinion of Dr. Zaenger resulting in an erroneous residual functional capacity determination, and erred in applying grid rule 202.17 in light of Plaintiff's limited knowledge of English.

15. The ALJ disregarded Dr. Zaenger's findings in favor of those of the agency physicians.  Dr. Zaenger was a treating physician, but the agency physicians were not.  A treating physician may offer an opinion about the claimant's impairments and the Commissioner will accord "controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994). While a treating physician may also

6

opine that a claimant is totally disabled, that opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *Id.;* 20 C.F.R.§ 404.1527(e)(2).

16. When disregarding the opinion of a treating physician, the ALJ must give specific, legitimate reasons and must consider the following specific factors to determine what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered;  and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995).  The ALJ failed to analyze these factors in his opinion.

17. The ALJ disregarded Dr. Zaenger's opinion as contained on the medical assessment form because he found it to be brief and conclusory and inconsistent with Dr. Zaenger's treatment notes. (R. at 24.) Dr. Zaenger answered all questions on the medical assessment form and noted the specific aspects of Plaintiff's condition causing the limitations. (R. at 163-65.)  In this regard, Dr. Zaenger's assessment was more complete and detailed than those completed by the agency physicians.  Moreover, Dr. Zaenger treated Plaintiff at least thirteen times over a two year period. (R. at 127-38; 155-58; 160-62; 166-68.)  There is no indication in the record that the agency physicians ever even saw Plaintiff. Furthermore, Dr. Zaenger's treatment records are consistent with his findings on the medical assessment form.  (*Id.*)  While it is true that Dr. Zaenger found that Plaintiff was

7

deconditioned and noted some somatization responses, there is no indication that Dr. Zaenger believed that Plaintiff was intentionally malingering or misrepresenting his symptoms. Indeed, Dr. Zaenger repeatedly diagnosed lumbar disc disease and multi level lumbar disc disease. Under these circumstances, the ALJ erred in disregarding the opinion of Dr. Zaegler. A remand is required to allow the ALJ to complete the sequential evaluation process in light of Dr. Zaenger's opinion.

18.    At step five, the ALJ relied on grid rule 202.17. 20 C.F.R. Part 404, Subpt. P, App. 2, 202.17. Grid rule 202.17 applies to persons who are at least literate and able to communicate in English. *Id*. The record in this case demonstrates that Plaintiff has a second grade education, and is unable to write or communicate in English.[2] (R. at 36-37; 48-49; 88-94; 102; 130.) Under these circumstances, the ALJ erred in relying on the grid rule 202.17. On remand, the ALJ should meet his burden at step five without relying on grid rule 202.17.

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11) be granted and that this matter be remanded to the Commissioner to allow the ALJ to complete the sequential evaluation process in light of Dr. Zaenger's opinion and to meet his burden at step five without relying on grid rule 202.17. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day

---

[2] If upon remand, the ALJ's analysis reaches step five, I suggest a finding concerning the impact of Plaintiff's illiteracy in English on his ability to work. El analfabetismo en el idioma predominante puede afectar de forma sustancial la capacidad de encontrar trabajo en la economía nacional. *See* Medical-Vocational Guidelines, 20 C.F.R. § 404 Subpt. P, App. 2; Rule 202.16; Social Security Acquiescence Ruling 86-3(5).

period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**